**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-cr-00313-TJK-1** |
| | : | |
| **ANDREW JACKSON MORGAN, Jr.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Andrew Jackson Morgan to 6 months of incarceration, a sentence at the high end of the 0-6 month guideline range calculated by the United States Probation Office and the parties, 12 months of supervised release, and $500 in restitution.

## I.    Introduction

Defendant Andrew Jackson Morgan, 62-year-old arborist, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.

Morgan pled guilty to one count of violating 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds. As explained herein, a sentence of incarceration is appropriate in this case because Morgan (1) joined the riot early—rallying with the front lines of the mob as it assaulted police lines on the upper West Plaza and the Lower West Terrace (LWT)

1

Tunnel, often recording the violence and chaos; (2)  actively berated and threatened law-enforcement as they were trying to hold the line against rioters; (3)  was present at the LWT Tunnel and actively encouraged people to resist more as they struggled with police; (4) joined the mob as it pushed against police at the LWT; (5) was present on Capitol Grounds for an extended period of time; (6) made posts to social media after the riot indicating a lack of remorse; and (7) was on legal restraint for a charge of "Interfering with Public Duties" when he committed the instant offense, and for which he was subsequently convicted.

The Court must also consider that Morgan's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the U.S. Capitol building, and disrupt the proceedings. Here, the facts and circumstances of Morgan's crime support a sentence of 6 months of incarceration—the high end of the guidelines range.

## II.      Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 56 (Statement of Offense) ¶¶ 1–7.

### ***Defendant Morgan's Role in the January 6, 2021 Attack on the Capitol***

Morgan traveled from his residence in Maxwell, Texas to participate in the "Stop the Steal" rally against the results of the 2020 Presidential Election.  Following the rally, Morgan approached the U.S. Capitol building from the West Front.  As he described to law-enforcement, he wanted to act as a "chameleon" to get close to the events.  Morgan saw the breach of the police line off to his left, and he went up to an archway to get footage.  The archway was the entrance to the LWT Tunnel, the area of perhaps the greatest concentration of violence on January 6.

Prior to approaching the LWT Tunnel, at approximately 2:25 p.m., Morgan approached the police line protecting the Capitol, and taunted police officers.  Morgan screamed "Give me that tear gas.  That tear case cannister belongs to me."  He screamed to MPD officers "Take off your badge, lay down your weapons and let us in our building . . . show solidarity to 'We The People' or we're going to run over you."   "We're going to run over you, do you think your little pea-shooter guns are going to stop this crowd?  No, we're going in that building."  *See* https://archive.org/details/WoLDnQNyd8pbTCiwo) at 34:30-35:27.  Image 1 is a screenshot from the police body camera footage, during which Morgan, dressed in "Harley Davidson" beanie, gray or black jacket, large frame prescription glasses, a lanyard with a "media" card, and an ear bud, stood towards the front of the crowd while threatening and berating officers as described above. Morgan is circled in yellow in Images 1-4 below.



*Image 1* (Screenshot from BWC at 2:25:23 pm)

Image 2 is a screenshot from open- source video footage, which shows how close Morgan was to both officers (while threatening and berating them) and the front of the mob (which had

just     breached     the     police     line     protecting     the     Capitol).          See

https://archive.org/details/2S69NcvXrFEfnuJCC, last accessed on Sept. 7, 2023.



*Image 2* (Screenshot from Open-Source video at 16:23)

Image 3 is a screenshot from open-source video footage depicting the breach of the police

line     that     was     protecting     the     West     Plaza     from     rioters.          See

https://web.archive.org/web/20210110204617/https://video.parler.com/xM/8C/xM8CXfu9pQHk.

mp4, last accessed on Sept. 7, 2023.  Morgan was present when the line was breached.



*Image 3* (Screenshot from Open-Source video at :36)

With others in the mob, Morgan rushed the Capitol after the Police line breach.  *See* Image 4.



*Image 4* (Open source photo
https://www.pacificpressagency.com/preview/1300390)

Much of Morgan's activity on January 6, 2021 was filmed, and narrated, by him.  Morgan styled himself as a member of the Press, and uploaded his video to his "Political Trance Tribune" channel on YouTube.  *See*  https://www.youtube.com/@PoliticalTrance/about, last accessed August 15, 2023.  On his own video, Morgan can be heard screaming "Let me in my building . . . I'm going in my building.  I'm going in my house.  Satan, you are leaving my house."  *See* https://www.youtube.com/watch?v=QfEjzABHqeY&t=993s at  16:25-17:00.   Image 5 is a screenshot from that video showing Morgan on the Northwest stairs, partway between the West Plaza below him and the LWT above him.



Capitol Eviction Notice - part 1- The Initial Breach

*Image 5* (Screenshot from
https://www.youtube.com/watch?v=QfEjzABHqeY&t=993s)

Mogan then climbed the stone railing to approach the LWT Tunnel area.  His own video shows

Morgan climbing the stone Capitol railing, screaming "forward march."   *See*

https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s) at 1:22 – 1:53.  Image 6 is a screenshot

from that video showing Morgan on the railing as described.



Capitol Eviction Notice ·part 2· Heave Ho

*Image 6* Screenshot from https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s

Throughout the video, Morgan can be heard screaming "give me my bullet."  Morgan then approached the area of the LWT Tunnel, backdrop of some of the most severe fighting and rioter assaults against officers during the riot.  *See* Image 7.



Capitol Eviction Notice ·part 2· Heave Ho

*Image 7* Screenshot from https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s

Morgan was present inside the LWT Tunnel when rioters were pushing against the police and shouting "heave."  *See* https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s.  Morgan was part of that mob, as shown in Image 8, images that he took as he was holding his video camera.



*Image 8* - Screenshot from https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s

Morgan was also present in the interior of the LWT Tunnel when officers sprayed the crowd in an effort to disperse rioters attempting to breach the Capitol building through that entrance. *See* Image 9.



*Image 9* - Screenshot from https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s

Morgan then retreated to the outer LWT Tunnel area, but yelled that they (the other rioters at the tunnel) "need more people."  Morgan also filmed rioters' violent assaults against the police.  *See* Image 10.  As the image, and video, shows, rioters were assaulting police with batons, were shoving police, and committing other acts of violence.



Capitol Eviction Notice •part 2• Heave Ho

*Image 10* Screenshot from https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s

In addition to yelling for more people, Morgan yelled "send helmets forward."  *See* https://www.youtube.com/watch?v=5b_lpJf42ss&t=18s  at 12:08.   At approximately, 5:15 p.m., Morgan finally left restricted Capitol grounds, having remained at the Capitol for several hours.

### *Morgan's Post-Riot Social Media*

After the riot, Morgan also posted to social media clearly showing his lack of remorse: spreading false information about January 6 (indicating that rioters were "being LET INTO the building"); minimizing or even lionizing his role ("I even told DC Police to take off their helmets and show solidarity…so as to possibly get them to do just that and avert a stampede.  They didn't listen sadly :-("); and celebrating January 6, going so far as to thank other rioters for their conduct

("Thank you to all the patriots who did the work right in front of me"). *See*

https://www.youtube.com/watch?v=QfEjzABHqeY&t=993s.



*Image 11* - Screenshot - https://www.youtube.com/watch?v=QfEjzABHqeY&t=993s

*Morgan's Interview with Law Enforcement*

On March 10, 2021, Morgan was interviewed in front of his residence in Maxwell, Texas.

After being advised of the identity of the interviewing Agent and the nature of the interview,

Morgan stated he would tell the agents "his story" as he had already posted "his story" on YouTube

for the benefit of the FBI.[1]  Morgan stated that he went to Washington DC for the events of January

6, 2021, because "something unprecedented" was going to occur.  He claimed that he wanted to

---

[1] Morgan created a YouTube channel titled "Political Trance Tribune" prior to the events of
January 6, 2021.  *See*
https://www.youtube.com/channel/UCpvxrbz4mTyPO0AKR3gb4NQ/about.

cover the events of January 6th because he is an independent journalist and a civil rights auditor.[2] He further claimed that on January 6th, everything was fine when the crowd was in the grassy area around the Capitol, but at some point, it was told to the crowd that they were getting in.  Morgan also said he went to the front of the crowd to act as a "chameleon," which he explained meant that he would act in a way to get close to the events. He claimed that the police line was breached off to his left and he went into a doorway to film the events, and that he went up to an archway to get video footage. He admitted to filming the riot on his phone and telling other rioters, "Good job patriot."

During the same March 10, 2021 interview, Morgan asserted that, although he felt that the 2020 Presidential election was stolen and he wanted to "go in his House (the Capitol building) to watch the proceedings of the Congress," he did not want to hit anyone and he did not want anyone else to get hit. He asserted that he began to film people who seemed to be in charge and he began to repeat their orders. Morgan alleged that if one of the leaders said, "Give me my rubber bullet," Morgan he would repeat the phrase.  Morgan also confirmed that he was concerned that the government had been hijacked and that people in power keep power through child pedophilia. However, he claimed he went to D.C. for a peaceful event.

---

[2] When shown a picture of himself at the Capitol riot by agents, Morgan reported that he obtained the press card he had from another purported civil rights auditor in Michigan who reportedly runs a group called the Michigan Constitutional Crusader.  PSR ¶ 26.

*The Charges and Plea Agreement*

On April 2, 2021, the United States charged Morgan by criminal complaint with violating 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On April 6, 2021, he was arrested. On April 21, 2021, the United States charged Morgan via Indictment with the same offenses.

On June 1, 2023, pursuant to a plea agreement, Morgan pled guilty to Count Two of the Indictment, charging him with violations of 18 U.S.C. 1752(a)(1). By plea agreement, Morgan agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Morgan now faces sentencing on one count of violating 18 U.S.C.§ 1752(a)(1). For this count, as noted by the plea agreement and the U.S. Probation Office, he faces up to one year of imprisonment and a fine of up to $100,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated Morgan's adjusted offense level under the Sentencing Guidelines as follows:

**Offense Level Computation (2021 U.S. Sentencing Guidelines)**

31. Count 2: Entering and Remaining in a Restricted Building or Grounds

32. Base Offense Level: The guideline for a violation of 18 U.S.C. § 1752(a)(1) is U.S.S.G. § 2B2.3. The base offense level is 4. U.S.S.G. § 2B2.3(a).    **4**

33. Specific Offense Characteristics: A trespass occurred at a restricted building or grounds; therefore, two levels are added pursuant to §2B2.3(b)(1)(A)(vii).    **+2**

34. Victim Related Adjustment: None    **0**

35. Adjustment for Role in the Offense: None    **0**

36. Adjustment for Obstruction of Justice: None    **0**

37. Adjusted Offense Level (Subtotal): Six    **6**

38. Chapter Four Enhancement: None    **0**

39. Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).    **-2**

40. Total Offense Level: Four    **4**

*See* PSR ¶¶ 31–40.

The U.S. Probation Office calculated Morgan's criminal history as a category of I. PSR ¶¶ 48-49. Accordingly, the U.S. Probation Office calculated Morgan's total adjusted offense level, after acceptance, at 4, and his corresponding Guidelines imprisonment range at zero months to six months. PSR at ¶ 77. Morgan's plea agreement contains an agreed-upon Guidelines'

calculation that is similar to the U.S. Probation Office's calculation,[3] and has the same Guideline's Range.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 6 months of incarceration and one year of supervised release.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at \*5 (D.D.C. Dec. 28, 2021). While assessing Morgan's participation in that attack to fashion a just sentence, this Court should consider various

---

[3] The parties estimated Morgan's criminal history to be 0 points in the Plea Agreement (ECF 55, ¶ 5c); however, Probation estimates it to be 1 point (PSR ¶ 48).  In either case, Morgan's criminal history would be Category I, so the final Guidelines range remains unchanged.

aggravating and mitigating factors. Notably, for a misdemeanor defendant like Morgan, the absence of violent or destructive acts is not a mitigating factor. Had Morgan engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Morgan's case is his eager participation at the front lines of the riot. Morgan hurled threats and berating language at officers while at the front of a mob waiting to break through initial police barricades at the West Plaza.  Then, when Morgan saw that rioters had broken through the police lines and begun their drive up the LWT area, he bolted forward, eager to join the mob as it pressed forward.  Morgan encouraged the mob despite witnessing police officers being assaulted, injured, and overwhelmed.  Morgan climbed on the Stone railing to gain access to the LWT Tunnel area.  Morgan encouraged and incited other rioters to engage in acts of violence, and he praised those rioters who engaged in violence.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of Morgan

As set forth in the PSR, Morgan, age 62, has an extensive criminal history.  The PSR lists multiple drug convictions, as well as a firearm offense.  Significantly, six months before his crime at the U.S. Capitol, Morgan was convicted of Interfering with Public Duties, and given a 15-day jail sentence, which was suspended.  *See* PSR ¶ 48.  According to the PSR, in June 2020, Morgan interfered with a police officer securing the scene of a motor vehicle collision and in doing so also interfered with both traffic control and scene securement efforts.  *Id.*  Morgan interfering with police and preventing a scene from being secured is thus not without precedent here.

These repeated violations demonstrate Morgan's contempt for the law.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of an in-range term of incarceration. Morgan's criminal history—which includes supervised release/probation violations and a recent conviction for interfering with law enforcement officers just months before January 6, indicating a troubling lack of respect for the courts and the law—as well as flagrant violations of the law on January 6, 2021, all demand commensurate penalty. Accordingly, a sentence of incarceration is necessary.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Morgan based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Morgan has pleaded guilty to Count Two the Indictment, charging him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), apply.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity.

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Morgan's criminal history, in particular his recent conviction for "Interfering with Public Duties," sets him apart from many January 6 defendants; he cannot argue that his conduct that day was a

momentary aberration in an otherwise law-abiding life.  While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Tanios*, 1:21-cr-222-02 (TFH), the defendant pled guilty to violations of 18 U.S.C. 1752(a)(1) and 18 U.S.C. 1752(a)(2).  Like Morgan, Tanios participated in the mob at the Lower West Plaza and the area immediately outside of the LWT Tunnel.  Tanios purchased and later provided pepper spray to co-defendant Julian Khater who then unprovoked, viciously, and cowardly assaulted three police officers who were protecting the U.S. Capitol and its members, by spraying them in the face with the pepper spray.  Like Morgan, Tanios spent substantial time at the location of some of the greatest violence at the Capitol.  Unlike Tanios, Morgan actively participated in the encouragement of aggression against police at the LWT Tunnel.  The Court sentenced Tanios to time served, 12 months of supervised release, and restitution in the amount of $500.  At the time of his sentencing, Tanios had served approximately 5 months in jail.

In *United States v. Liu*, 1:21-cr- 711 (TJK), the defendant pled guilty to a violation of 18 U.S.C. 1752(a)(1).  Liu entered the Capitol two times, and stayed for approximately 34 minutes in total.  Although Liu faced off with USCP officers at the Senate Wing Door, the confrontations at the Senate Wing Door were not nearly as violent as those at the LWT Tunnel.  In contrast, Morgan was present and encouraging rioters at the LWT Tunnel where officers were crushed by doors being pushed by rioters, officers were affirmatively being assaulted with weapons, and chemical irritant was deployed, unsuccessfully, to disperse the crowd.  In short, the violence and chaos in which Morgan participated far exceeded that of Liu.  Further, the time spent by Liu inside the Capitol was far short of the hours Morgan spent on restricted grounds and at the threshold of the Capitol in the LWT Tunnel.  On June 15, 2023, this Court sentenced Liu to four months of

incarceration followed by a term of twelve months of supervised release, restitution and a special assessment.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant Andrew Jackson Morgan to 6 months of incarceration, a sentence at the high end of the 0-6 month guideline range calculated by the United States Probation Office and the parties, 12 months of supervised release, and $500 in restitution, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ James D. Peterson*
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov